IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| BIANCA BLADES, ANGELA WILLBORN, MEGAN WHELPLEY, MIA CANADA, JERMAINE MYERS,<br><br>        Plaintiffs,<br><br>v.<br><br>CORINTHIAN COLLEGES, INC., and EVEREST COLLEGE,<br><br>        Defendants. | CIVIL NO. |

## **COMPLAINT**

### **INTRODUCTION**

Plaintiffs Bianca Blades, Angela Willborn, Megan Whelpley, Mia Canada, and Jermaine Myers, by and through the undersigned counsel, bring this complaint for damages and other relief on behalf of themselves against Defendants and state and allege as follows:

### **PARTIES**

1.      Plaintiff Bianca Blades is a resident of Atlanta, Georgia.

2.      Plaintiff Angela Willborn is a resident of Lithonia, Georgia.

3.      Plaintiff Megan Whelpley is a resident of Douglasville, Georgia.

4.      Plaintiff Mia Canada is a resident of Atlanta, Georgia.

5.      Plaintiff Jermaine Myers is a resident of Atlanta, Georgia.

6.      Defendant Corinthian College, Inc., ("Corinthian") is a Delaware corporation which maintains offices and does business in the state of Georgia, including this judicial district.

7.      Defendant Everest College ("Everest"), aka Everest Institute, and aka Everest University, is a for-profit college owned and operated by Defendant Corinthian, which operates in the state of Georgia and throughout the United States.

### JURISDICTION AND VENUE

8.      Plaintiffs, on behalf of themselves, bring this action against Defendants under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA") for failure to pay overtime compensation at the proper rate as required by the FLSA, and, therefore, this Court has original jurisdiction over this case based on 28 U.S.C. § 1331.

9.      Under 28 U.S.C. § 1391, venue is proper in the United States District Court for the Northern District of Georgia because: (1) Defendant Corinthian is a corporation who does business within the state of Georgia and is subject to personal jurisdiction within the state of Georgia, and (2) Defendant Everest is a

for-profit college who does business within the state of Georgia and is subject to personal jurisdiction within the state of Georgia; and (3) a substantial part of the events or omissions giving rise to Plaintiffs' claims, as described in this complaint, occurred within the Northern District of Georgia.

10.     Defendant Corinthian owns and operates Defendant Everest and owns and operates diploma and/or degree programs in the health care, business, and computer technology career field at over 100 Everest campuses located across the United States and Canada.

11.     Therefore, Defendant Corinthian has been and continues to be engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA.

12.     In addition, Defendant Everest has been and continues to be engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA.

13.     Defendants jointly have been and continue to be engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA.

14.     Defendants are each and jointly an "enterprise" and "enterprise engaged in commerce" as defined by Sections 3(r) and (s) of the FLSA.

15.     Defendants regularly employ individuals and conduct business, including but not limited to educational services, throughout the United States.

16.     During their employment with Defendants, Plaintiffs were regularly engaged in interstate commerce and/or in the production of goods for commerce, including, but not limited to, regularly using the instrumentalities of interstate commerce in their work, e.g., regular and recurrent use of interstate telephone, mails, and online services.

17.     Defendant Corinthian has had an annual gross volume of sales made or business done in excess of $500,000.00 for the three years prior to the filing of this lawsuit.

18.     Defendant Everest has had an annual gross volume of sales made or business done in excess of $500,000.00 for the three years prior to the filing of the this lawsuit.

19.     Defendants have had a combined annual gross volume of sales made or business done in excess of $500,000.00 for the three years prior to the filing of this lawsuit.

20.     Plaintiffs are individuals who have been employed in the admissions and career services departments by the Defendants prior to the filing of this complaint and continuing through the duration of this action who have worked

more than 40 hours in a workweek but have not been paid at the proper overtime rate as required by the FLSA.

**FACTUAL ALLEGATIONS IN SUPPORT OF CLAIM THAT DEFENDANTS ARE EMPLOYERS OF PLAINTIFFS**

21.    Defendant Corinthian is a corporation that provides education services throughout the United States, including within the state of Georgia.

22.    Defendant Everest is a for-profit college system owned and operated by Defendant Corinthian that provides education services throughout the United States, including within the state of Georgia.

23.    Defendants control and determine payroll, compensation, scheduling, and other employment policies and practices, including the policies and practices that form the basis of this lawsuit.

24.    For example, Defendants developed and implemented the "Corinthian Colleges, Inc. Employee Handbook," which was in effect prior to, during, and after the events at issue in this lawsuit.

25.    The Employee Handbook is generally applicable to all employees and support staff, including Plaintiffs, during their employment with Defendants.

26.    Defendants have the power to hire and fire Plaintiffs.

27.    Defendants supervised and controlled the work schedules and other terms of employment of Plaintiffs.

28.     Defendants determined and/or determine the rate and method of payment for Plaintiffs.

29.     Defendants maintain employment records of Plaintiffs.

30.     Defendants supervise the work performed by Plaintiffs.

31.     Some or all of Plaintiffs have had work delegated to them by Defendants.

32.     Defendants were employers of Plaintiffs for the purposes of the FLSA.

## GENERAL FACTUAL ALLEGATIONS IN SUPPORT OF PLAINTIFFS' CLAIM FOR OVERTIME

33.     During their employment with Defendant Corinthian, Plaintiffs were not exempt from the requirements of the FLSA

34.     During their employment with Defendant Everest, Plaintiffs were not exempt from the requirements of the FLSA.

35.     During their employment, Plaintiffs were generally paid for only 40 hours per workweek.

36.      However, Plaintiffs regularly worked more than 40 hours per workweek.

37.     For example, Defendants assigned work to Plaintiffs that could not be successfully completed within 40 hours per workweek.

38.    However, Defendants required Plaintiffs to complete all assigned work regardless of the amount of time it took Plaintiffs to complete the work.

39.    Furthermore, Defendants threatened Plaintiffs with possible termination if Plaintiffs did not successfully complete all assigned work.

40.    As another example, Defendants regularly required Plaintiffs to work during their lunch breaks, which regularly resulted in Plaintiffs working more than 40 hours per workweek.

41.    Defendants instituted a policy and practice of requiring at least one employee to be at their desk during their lunch break.

42.    Defendants' policy and practice required Plaintiffs to work through their lunch break.

43.    In addition, Defendants regularly interrupted Plaintiffs during their lunch breaks to perform assigned work.

44.    Defendants did not compensate Plaintiffs for hours worked during their lunch breaks.

45.    Instead, Defendants deducted 1 hour of time for lunch from Plaintiffs' time sheets regardless of whether Plaintiffs received an uninterrupted lunch break.

46.    As another example, Defendants also required Plaintiffs to perform work from home before and after Plaintiffs' scheduled hours.

47.    Plaintiffs were not permitted to record any of the hours worked from home before and after Plaintiffs' scheduled hours.

48.    Throughout Plaintiffs' employment, Defendants did not compensate Plaintiffs for their hours worked in excess of 40 hours per workweek at the overtime premium rate required by the FLSA.

49.    On the instances where Defendants did compensate Plaintiffs for hours worked in excess of 40 per workweek, Defendants compensated Plaintiffs with comp time or time off instead of overtime wages at the premium rate required by the FLSA.

50.    Defendants were required to compensate Plaintiffs for hours worked in excess of 40 per workweek at the overtime premium rate required by the FLSA.

51.    During their employment with Defendant Corinthian, Plaintiffs did not qualify for any exemption to the requirements of the FLSA.

52.    During their employment with Defendant Everest, Plaintiffs did not qualify for any exemption to the requirements of the FLSA.

53.    For example, Plaintiffs did not qualify for the executive exemption because their primary duty did not consist of management of the Defendants' enterprise or a recognized department or subdivision thereof as required by 29 C.F.R. § 541.100.

54.    By way of further example, Plaintiffs did not qualify for the administrative exemption because their duties do not involve the exercise of discretion and independent judgment of the type required by 29 C.F.R. § 541.200.

55.    By way of further example, Plaintiffs do not qualify for the learned professional exemption because their occupation lacks a requirement of knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction as required by 29 C.F.R. 541.300.

56.    In addition, Plaintiffs were paid on an hourly basis.

57.    Therefore, Plaintiffs were not paid on a bona fide salary basis.

58.    Plaintiffs were and/or are frequently required to work more than 40 hours per workweek, but they are not paid at the overtime rate required under the FLSA.

59.    For at least the three years prior to the filing of the complaint initiating this action, Defendants have had a policy and practice of not accurately recording the actual hours Plaintiffs worked.

**FACTUAL ALLEGATIONS IN SUPPORT OF
PLAINTIFF BIANCA BLADES' CLAIM FOR OVERTIME**

60.    Plaintiff Bianca Blades began working for Defendants on or about September 3, 2010.

61.    Ms. Blades' employment with Defendants was terminated on or about April 4, 2012.

62.    Ms. Blades worked as a Career Representative with Defendants, and she was primarily responsible for assisting students in finding career placement.

63.    Ms. Blades' rate of pay was approximately $20.10 per hour.

64.    Ms. Blades' annual salary was approximately $42,000 while employed by Defendants.

65.    Ms. Blades' job duties included helping students with resumes and interviews, conducting various administrative tasks, and making phone calls to prospective employers.

66.    Ms. Blades regularly worked more than 40 hours per workweek during her employment but was not paid for those hours at the overtime premium rate required by the FLSA.

67.    For example, Defendants increased the amount of work assigned to Ms. Blades during her employment with Defendants.

68.    Defendants increased the number of calls Ms. Blades was required to make to companies to place students from 30-50 calls per day to 75-100 calls per day.

69.     Ms. Blades was typically unable to make all of the required calls within a 40-hour workweek.

70.     Therefore, Ms. Blades was required to work more than 40 hours during a workweek so that she could complete all of her assigned work.

71.     As another example, Ms. Blades was often unable to take a lunch break due to the amount of work she was assigned.

72.     Defendants required Ms. Blades to document that she had taken a lunch break, despite not actually taking a lunch break.

73.     Defendants would not permit Ms. Blades to record all of her working time on her timesheets.

74.     Yet, Defendants threatened Ms. Blades with disciplinary action should she be unable to complete her assigned work during her scheduled hours.

75.     Therefore, Ms. Blades was required to record less hours than she actually worked so that she could complete her assigned work and avoid being disciplined.

**FACTUAL ALLEGATIONS IN SUPPORT OF**
**PLAINTIFF ANGELA WILLBORN'S CLAIM FOR OVERTIME**

76.     Plaintiff Angela Willborn began working for Defendants on or about May 3, 2011.

77.    Ms. Willborn's employment with Defendants was terminated on or about November 3, 2011.

78.    Ms. Willborn worked as a Career Services Account Manager with Defendants, and she was primarily responsible for meeting with companies to assist students in finding career placement.

79.    Ms. Willborn's rate of pay was approximately $23.08 per hour.

80.    Ms. Willborn's annual salary was approximately $48,000 while employed by Defendants.

81.    Ms. Willborn's job duties included helping students with preparing resumes, sitting for interviews, making site visits to companies to place students, conducting various administrative tasks, and making phone calls and drafting emails to companies to place students.

82.    Ms. Willborn regularly worked more than 40 hours per workweek during her employment but was not paid for those hours at the overtime premium rate required by the FLSA.

83.    For example, Ms. Willborn was typically unable to complete all of her assigned work within a 40 hour workweek.

84.    Therefore, Ms. Willborn was required to work more than 40 hours during a workweek so that she could complete all of her assigned work.

85.     Despite the fact that she had to work more than 40 hours during a workweek to complete all of her assigned work, she was told that she would not be paid for any hours she worked over 40 in a workweek.

86.     As another example, Ms. Willborn was often unable to take a lunch break due to the amount of work she was assigned.

87.     Defendants required Ms. Willborn to document that she had taken a lunch break, despite the fact that she typically had to work through her scheduled lunch break.

88.     Defendants threatened Ms. Willborn with disciplinary actions should she be unable to complete her assigned work during her scheduled hours.

89.     Therefore, Ms. Willborn was required to record less hours than she actually worked so that she could complete her assigned work and avoid being disciplined.

## FACTUAL ALLEGATIONS IN SUPPORT OF
## PLAINTIFF MEGAN WHELPLEY'S CLAIM FOR OVERTIME

90.     Plaintiff Megan Whelpley began working for Defendants on or about March 13, 2011.

91.     Ms. Whelpley's employment with Defendants was terminated on or about March 12, 2012.

92.     Ms. Whelpley worked as an Admissions Representative with Defendants, and she was primarily responsible for recruiting prospective students.

93.     Ms. Whelpley's rate of pay was approximately $18.21 per hour.

94.     Ms. Whelpley's annual salary was approximately $38,800 while employed by Defendants.

95.     Ms. Whelpley's job duties included placing phone calls to prospective students, interviewing prospective students, and conducting various administrative tasks.

96.     Ms. Whelpley regularly worked more than 40 hours per workweek during her employment but was not paid for those hours at the overtime premium rate required by the FLSA.

97.     For example, Ms. Whelpley was typically unable to complete all of her assigned work within a 40 hour workweek.

98.     Therefore, Ms. Whelpley was required to work more than 40 hours during a workweek so that she could complete all of her assigned work.

99.     Despite the fact that she had to work more than 40 hours during a workweek to complete all of her assigned work, Defendants did not generally compensate Ms. Whelpley for hours she worked over 40 in a workweek.

100. For example, Ms. Whelpley worked more than 40 hours per workweek each of her first two workweeks as an employee with Defendants.

101. Ms. Whelpley completed a time sheet indicating that she worked more than 40 hours per workweek for each of her first two weeks as an employee with Defendants.

102. Ms. Whelpley's supervisor told Ms. Whelpley that she would not be compensated for the hours over 40 that she had worked for each of those workweeks, because the company does not compensate employees for hours worked over 40 in a workweek.

103. As another example, Defendants required Ms. Whelpley to take and successfully complete product knowledge tests as part of her job.

104. In order to prepare for the product knowledge tests, Ms. Whelpley spent time studying at home with the knowledge of her supervisor.

105. Due to Defendants' policy of not compensating employees for overtime, Ms. Whelpley did not record the hours over 40 in a workweek that she spent at home preparing for the product knowledge tests and completing other assignments.

106. As another example, Ms. Whelpley's supervisor disciplined her on at least one occasion for recording more than 40 hours on her weekly timesheet.

107.   Therefore, Ms. Whelpley typically indicated that she worked 40 hours or less per workweek on her time sheet despite working greater than 40 hours per workweek.

108.   As a further example, Ms. Whelpley was typically unable to take an uninterrupted lunch break because she had to complete job responsibilities during that time.

109.   The break room available to employees included a work telephone.

110.   Ms. Whelpley regularly received work-related calls on the break room telephone during her lunch break.

111.   Yet, Defendants required Ms. Whelpley to document that she had taken a lunch break even when she conducted work during her lunch break.

## FACTUAL ALLEGATIONS IN SUPPORT OF
## PLAINTIFF MIA CANADA'S CLAIM FOR OVERTIME

112.   Plaintiff Mia Canada began working for Defendants on or about March 21, 2011.

113.   Ms. Canada's employment with Defendants was terminated on or about December 30, 2011.

114.   Ms. Canada worked as an Account Representative with Defendants, and she was primarily responsible for developing relationships with prospective employers and identifying potential job openings.

115.   Ms. Canada's rate of pay was approximately $21.00 per hour, which was her rate of pay throughout her employment.

116.   Ms. Canada's job duties included placing phone calls to companies to determine potential job openings for students, building relationships with companies, and conducting various administrative tasks.

117.   Ms. Canada regularly worked more than 40 hours per workweek during her employment but was not paid for those hours at the overtime premium rate required by the FLSA.

118.   For example, Ms. Canada was typically unable to complete all of her assigned work within a 40 hour workweek.

119.   Therefore, Ms. Canada was required to work more than 40 hours during a workweek so that she could complete all of her assigned work.

120.   Despite the fact that she had to work more than 40 hours during a workweek to complete all of her assigned work, she was told that she would not be paid for any hours she worked over 40 in a workweek.

121.   As another example, Ms. Canada frequently worked from home with her supervisor's knowledge, so that she could complete all of her assigned work.

122.   Ms. Canada provided companies with her personal cell phone number.

123.   Ms. Canada regularly received phone calls from companies on her personal cell phone before and after her scheduled work hours to discuss employing students.

124.   Ms. Canada's supervisor required her to answer these calls from companies regarding placement of students, regardless of the time that she received the call.

125.   Although answering and returning these phone calls before and after her scheduled work hours required Ms. Canada to work more than 40 hours in a workweek, Ms. Canada was instructed not to record on her timesheet the hours she worked over 40 in a workweek.

126.   As another example, Ms. Canada's job responsibilities required her to work during her lunch break.

127.   Ms. Canada was regularly unable to take a full uninterrupted lunch break because of work-related phone calls, assisting students, and other job responsibilities.

128.   Despite regularly working through her lunch break, Defendants did not allow Ms. Canada to record that working time on her weekly timecard, but made her deduct one hour for her lunch break.

129.   Therefore, Ms. Canada was required to record less hours than she actually worked so that she could complete her assigned work and avoid being disciplined.

## FACTUAL ALLEGATIONS IN SUPPORT OF
## PLAINTIFF JERMAINE MYERS' CLAIM FOR OVERTIME

130.   Plaintiff Jermaine Myers began working for Defendants on or about September 3, 2010.

131.   Mr. Myers' employment with Defendants was terminated on or about November 16, 2012.

132.   Mr. Myers initially worked as an Admissions Representative with Defendants, and he was primarily responsible for recruiting prospective students.

133.   Mr. Myers' rate of pay was approximately $18.75 per hour.

134.   Mr. Myers' annual salary was approximately $39,000 at the time his employment with Defendants was terminated.

135.   As an Admissions Representative, Mr. Myers' job duties included placing phone calls to prospective students, interviewing prospective students, and conducting various administrative tasks.

136.   In 2011, Mr. Myers was promoted to Student Services Coordinator.

137.   As a Student Services Coordinator, Mr. Myers assisted with programs and events aimed at enhancing student satisfaction, success, and retention.

138.   Approximately 3 or 4 months after his promotion to Student Services Coordinator, Mr. Myers was assigned the additional job responsibilities of a Re-Entry Coordinator.

139.   Mr. Myers' job responsibilities as a Re-Entry Coordinator included re-enrolling and advising students who had previously dropped out of school.

140.   Mr. Myers regularly worked more than 40 hours per workweek throughout this employment with Defendants but was not paid for those hours at the overtime premium rate required by the FLSA.

141.   For example, Mr. Myers was typically unable to complete all of his assigned work within a 40 hour workweek.

142.   Therefore, Mr. Myers was required to work more than 40 hours during a workweek so that he could complete all of his assigned work.

143.   Despite the fact that he had to work more than 40 hours during a workweek to complete all of his assigned work, he was told that he would not be paid for any hours he worked over 40 in a workweek.

144.   As another example, Mr. Myers' supervisor, Sedrick Strickland, told Mr. Myers that he was responsible for completing the day-to-day job responsibilities of the Student Services Coordinator position as well as a Re-Entry Coordinator position.

145.   Mr. Strickland told Mr. Myers that Defendants did not have the money to hire another employee to complete the additional work assigned to Mr. Myers.

146.   Therefore, Mr. Myers consistently worked more than 40 hours per workweek in order to complete the assigned work of both positions.

147.   Defendants threatened Mr. Myers with disciplinary action should he be unable to complete all of the assigned work during his scheduled hours.

148.   Therefore, Mr. Myers was required to record less hours than he actually worked so that he could complete his assigned work and avoid being disciplined.

## COUNT I

## WILLFUL FAILURE TO PAY PLAINTIFFS OVERTIME FOR ALL HOURS WORKED IN EXCESS OF 40 HOURS PER WORKWEEK

149.   Defendants suffered or permitted Plaintiffs to perform compensable work in excess of 40 hours per workweek but did not pay Plaintiffs at the overtime rate required by the FLSA for all hours worked in excess of 40 hours per workweek.

150.   For example, Defendants have a policy and practice of assigning work to Plaintiffs that required the employees to work more than 40 hours per workweek.

151.   With respect to at least one employee, Defendants required the employee to complete the job responsibilities that would normally be assigned to two separate employees.

152.   By way of further example, Defendants regularly required Plaintiffs to work during their lunch break.

153.   Defendants had a policy and practice of requiring Plaintiffs to work through their lunch breaks but did not allow Plaintiffs to record that time on their weekly timesheets.

154.   In addition, Defendants required at least some of the Plaintiffs to perform work at home.

155.   Defendants had a policy and practice of requiring Plaintiffs to work from home but did not allow Plaintiffs to record that time on their weekly timesheets.

156.   However, Defendants failed to pay overtime wages to Plaintiffs for all hours worked in excess of 40 per workweek at the appropriate rate as required by the FLSA and its implementing regulations.

157. Defendants' failure to pay proper overtime wages for each hour worked over 40 per workweek was intentional and willful within the meaning of

29 § U.S.C. 255, particularly in light of the facts that the Employee Handbook states that employees shall be compensated for overtime.

158.   Plaintiffs are entitled to recover all unpaid overtime wages from Defendants that were secured by the FLSA as well as an equal amount in liquidated damages.

159.   Plaintiffs are also entitled to attorney's fees and costs incurred in connection with this claim.

## PRAYER FOR RELIEF

Based on the allegations set forth in this complaint and the evidence as it is developed in this case, Plaintiffs respectfully pray that the Court:

- enter judgment in favor of Plaintiffs;

- enter judgment against Defendants that their violations of the FLSA were willful;

- award Plaintiffs their unpaid back wages;

- award Plaintiffs an amount equal to their unpaid wages as liquidated damages as provided for under the FLSA;

- award Plaintiffs their attorney's fees and litigation costs incurred in prosecuting these claims as provided for under the FLSA; and

- grant Plaintiffs all other further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury.

Dated: October 7, 2013

Respectfully submitted,

s/John T. Stembridge
John T. Stembridge
Georgia Bar No. 678605
John@AndrewsStembridge.com
Gary Blaylock "Blake" Andrews, Jr.
Georgia Bar No. 019375
Blake@AndrewsStembridge.com
Andrews & Stembridge, LLC
2951 Piedmont Road, Suite 300
Atlanta, GA 30305
Telephone: 404-604-2691
Facsimile: 866-828-6882